UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA R.D.,[1] <br> Plaintiff, <br> v. <br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, <br> Defendant. | Case No. 5:21-cv-00525-JC <br><br> MEMORANDUM OPINION <br><br> [DOCKET NOS. 18, 25] |

## I. SUMMARY

On March 25, 2021, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of her applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion"). The Court has taken the parties' arguments under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

---

[1] Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 8, 2016, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits, alleging disability beginning on January 1, 2010, due to spinal stenosis, spinal spondylosis, myolopathy, degenerative disc disease, protruding disc, torn ligament, fibromyalgia, major depression, and memory loss. (See Administrative Record ("AR") 378-96, 424).

An ALJ subsequently examined the medical record and, on March 1, 2019, heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 39-71). On March 13, 2019, the ALJ determined that plaintiff was not disabled during the relevant period, which was from November 3, 2012, to the date of the decision.[2] (AR 19-32). Specifically, the ALJ found: (1) plaintiff has the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, fibromyalgia, chronic pain syndrome, right foot sprain and hallux valgus, obesity, right shoulder degenerative joint disease, headaches, post-traumatic stress disorder (PTSD), and major depressive disorder (AR 23); (2) plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 23); (3) plaintiff retains the residual functional capacity (or "RFC")[3] to perform a reduced range of light work (20

---

[2]Because plaintiff previously had filed applications in March 2010 that were denied on November 2, 2012, the relevant period for the applications at issue here began on November 3, 2012. (See AR 19, 22, 169-87, 409-10).

[3]Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

C.F.R. §§ 404.1567(b), 416.967(b))[4] (AR 25); (4) plaintiff cannot perform any past relevant work (AR 30); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically bench assembler, routing clerk, and housekeeper (AR 31-32); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were inconsistent with the medical evidence and other evidence in the record (AR 26).

On June 11, 2020, the Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds; 20 C.F.R. §§ 404.1505(a), 416.905(a). To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

///

---

[4] The ALJ found that plaintiff (i) can occasionally climb ramps or stairs; (ii) can never climb ladders, ropes, or scaffolds; (iii) can occasionally balance, stoop, kneel, crouch or crawl; (iv) can occasionally reach overhead with the bilateral upper extremities; (v) can understand, remember, and carry out simple routine work tasks with no more than occasional workplace changes; (vi) can have frequent interaction with co-workers and supervisors; (vii) can have occasional contact with the public; and (viii) cannot not perform fast pace production rate jobs, such as assembly line jobs. (AR 25).

1  To assess whether a claimant is disabled, an ALJ is required to use the five-
2 step sequential evaluation process set forth in Social Security regulations.  See
3 Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)
4 (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,
5 416.920).  The claimant has the burden of proof at steps one through four – *i.e.*,
6 determination of whether the claimant was engaging in substantial gainful activity
7 (step 1), has a sufficiently severe impairment (step 2), has an impairment or
8 combination of impairments that meets or medically equals one of the conditions
9 listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and
10 retains the residual functional capacity to perform past relevant work (step 4).
11 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The
12 Commissioner has the burden of proof at step five – *i.e.*, establishing that the
13 claimant could perform other work in the national economy.  Id.

**B.   Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the
Commissioner's "final decision" was "based on legal error or not supported by
substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871
F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard
of review in disability cases is "highly deferential."  Rounds v. Comm'r of Soc.
Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks
omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably
support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75
(citations omitted).  Even when an ALJ's decision contains error, it must be
affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin.,
775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to
the ultimate nondisability determination; or (2) ALJ's path may reasonably be
discerned despite the error) (citation and quotation marks omitted).
///

1      Substantial evidence is "such relevant evidence as a reasonable mind might
2 accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining
3 "substantial evidence" as "more than a mere scintilla, but less than a
4 preponderance") (citation and quotation marks omitted).  When determining
5 whether substantial evidence supports an ALJ's finding, a court "must consider the
6 entire record as a whole, weighing both the evidence that supports and the evidence
7 that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d
8 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

9      Federal courts review only the reasoning the ALJ provided, and may not
10 affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."
11 Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need
12 not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's
13 reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin,
14 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

15     A reviewing court may not conclude that an error was harmless based on
16 independent findings gleaned from the administrative record. Brown-Hunter, 806
17 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently
18 conclude that an error was harmless, a remand for additional investigation or
19 explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173
20 (9th Cir. 2015) (citations omitted).

21 **IV.  DISCUSSION**

22     Plaintiff claims that the ALJ failed to give legally sufficient reasons to reject
23 her statements regarding the limiting effects of her conditions. (See Plaintiff's
24 Motion at 6-9).  For the reasons stated below, the Court concludes that a reversal or
25 remand is not warranted.

26 ///
27 ///
28 ///

### A. Legal Standard for ALJ's Assessment of Claimant's Subjective Statements

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4-10.[5] When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89. This

---

[5]Social Security Rulings reflect the Social Security Administration's ("SSA") official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings).

requirement is very difficult to satisfy. See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements. SSR 16-3p, 2017 WL 5180304, at *10. An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement. Treichler, 775 F.3d at 1103 (citation omitted). Unless there is affirmative evidence of malingering, the Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks omitted), as amended (Apr. 9, 1996). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

**B.     Plaintiff's Statements**

Plaintiff provided statements on two function reports dated June 28, 2016 (AR 437-44, 450-58), and at the hearing on March 1, 2019 (AR 43-63), alleging the following:

She experiences constant pain all over her body, with aching in her back, shoulders, neck, legs, and feet. (AR 50, 437, 450). She also has difficulty

sleeping, but she gets a little ease from lying down on her side. (AR 437, 450-51). She cannot sit or stand for long periods (AR 437, 450), and she has limitations in lifting, standing, reaching, walking, sitting, and performing postural activities. (AR 441, 455). She can lift a gallon of milk (about eight pounds) but not often, and she tries not to even pick up groceries. (AR 61). She relies on a cane to walk. (AR 55, 443, 456). She can stand for twenty minutes, walk up and back for a block, and sit slouched over. (AR 61-62). On a typical day, she takes her medications, puts on a heating pad or TENS unit, and lies in bed watching television while doing some stretching. (AR 51, 438, 451). She goes outside about two or three times a week (AR 439, 453), but she does not drive herself (AR 57-58).

Plaintiff also has a bad memory (AR 437, 450) and has limitations in completing tasks, remembering, concentrating, understanding, and getting along with others (AR 441, 455). She cannot handle stress, which causes anxiety and panic attacks. (AR 456). She has suicidal thoughts at least four times a year and has made several suicide attempts in recent years. (AR 47-48). She has not received regular psychiatric treatment since 2009. (AR 50).

### C. Analysis

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 26). The ALJ supported this finding with specific, clear and convincing reasons, based on references to specific evidence in the record, including plaintiff's treatment history and medical evidence. (See AR 26-30).

First, the ALJ found that plaintiff "failed to comply with treatment in a manner consistent with the alleged complaints," and did not give a sufficient explanation for this failure. (AR 27). This was evidenced by the fact that plaintiff

ran out of and was off her pain medication for weeks at a time (AR 983, 1340, 1650) and had not received psychiatric treatment since 2009 (AR 50). Plaintiff's inconsistent treatment history is a specific and legitimate reason to discount her allegations related to constant, debilitating pain and other limitations. See, e.g., Molina, 674 F.3d at 1112 (in assessing claimant's credibility, ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment"); Burch, 400 F.3d at 681 (lack of consistent treatment such as where there was a three to four month gap in treatment properly considered in discrediting claimant's back pain testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications).

      Second, the ALJ reasonably determined that the extent of plaintiff's alleged pain and limitations was not supported by the medical evidence of record. (AR 26, 28). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ." Burch, 400 F.3d at 681. For example, the ALJ found that plaintiff's alleged difficulty walking and reliance on a cane were inconsistent with her musculoskeletal examinations showing normal range of motion. (AR 27; see AR 1287-88, 1425). Moreover, reviewing plaintiff's physical examinations, the ALJ noted that, on March 20, 2013, plaintiff exhibited no bony tenderness, swelling, edema or deformity of the thoracic spine (AR 1014); on June 15, 2013, a neurological exam showed no significant abnormality (AR 1049); on October 21, 2013, plaintiff exhibited normal shoulder range of motion, pulse, and strength, and no swelling, effusion, crepitus or deformity (AR 1132); on November 12, 2013, she had normal

range of motion with no edema and a negative straight leg raise test (AR 1162-63); on December 31, 2014, her thoracic spine exam was normal (AR 795); on February 14, 2015, plaintiff's left lower extremity exam was normal (AR 1252); on August 10, 2015, her left ankle exam revealed no abnormal findings (AR 817); on August 23, 2015, a lumbar spine MRI showed mild to moderate findings (AR 814); on August 12, 2016, a neurological exam was normal (AR 971); on September 22, 2017, and January 17, 2018, plaintiff's musculoskeletal exams showed normal range of motion and neurological exams showed no abnormal findings (AR 1287-88, 1425); on September 22, 2018, an x-ray of the right ankle was unremarkable, an x-ray of the bilateral shoulders revealed mild findings, and an x-ray of the right foot showed mild hallux valgus (AR 1603-05); on November 19, 2018, a right hand x-ray showed mild findings (AR 1658); and on November 19, 2018, plaintiff reported that her pain was only at moderate level, and she was not taking any pain medications (AR 1650).

Regarding plaintiff's mental conditions, the ALJ noted that, on November 30, 2012, and June 15, 2013, plaintiff's mood, affect, behavior, judgment, thought content, cognition, and memory were normal (AR 987, 1038); on August 19, 2013, she had normal mood, affect, insight, and judgment (AR 771); on September 14, 2013, her attention, concentration, and memory were good (AR 1399); on December 2, 2013, October 9, 2014, December 31, 2014, and April 6, 2015, she had normal mood, affect, insight, and judgment (AR 779, 790, 795, 800); on April 22, May 21, June 24, July 24, November 2, and December 10, 2015, she was in good spirits and in no acute distress (AR 853, 867, 881, 895, 923, 937); on January 19, April 11, and July 22, 2016, she had appropriate mood and affect and normal insight and judgment (AR 806, 1318, 1322); on August 12, 2016, her psychiatric exam was normal (AR 1328); on April 28 and August 18, 2017, plaintiff's psychiatric exams were normal with appropriate mood and affect (AR 1339, 1350); and on January 17, March 6, April 13, and May 18, 2018, her

symptoms remained stable with appropriate mood and affect (AR 1355, 1361, 1367, 1425).

Plaintiff fails to identify any error in these findings. Instead, she raises just a few vague, undeveloped points. For example, with little context, plaintiff references two records reflecting that she has "antalgic" gait, and she states that her treating physician, Dr. Arul Doraiswamy, M.D., "agreed that [plaintiff] had increased pain with sitting, bending, standing, and walking."[6] (Plaintiff's Motion at 8) (citing AR 806, 910, 1566). However, the ALJ did not dispute that plaintiff experienced some pain. Rather, the ALJ determined that plaintiff's treatment history and examinations did not support the extent of the pain and limitations that plaintiff alleged. This finding is reasonable and supported by substantial evidence in the record. As shown in the ALJ's fairly detailed review summarized above, plaintiff's examinations largely reflect normal findings, along with plaintiff's inconsistent use of pain medications. (See AR 27-29). Although the medical record undoubtedly contains some abnormal findings as well, the Court must defer to the ALJ's reasonable interpretation of the record. See Brown-Hunter, 806 F.3d at 492 ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (quoting Treichler, 775 F.3d at 1098); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld").

Plaintiff also asserts, confusingly, that the ALJ "cited activities of daily living" but "does not correlate the activities with functions that required of simple work with significantly eroded ability to sit, stand, and walk with limited capacity to lift and carry." (Plaintiff's Motion at 8) (citing AR 26). As defendant points out

---

[6] The ALJ considered Dr. Doraiswamy's medical opinion in the record and gave it little weight. (AR 29-30). Plaintiff does not appear to dispute that finding.

(see Defendant's Motion at 8-9), the ALJ actually never discussed plaintiff's daily activities – nor was the ALJ required to do so. See Powell v. Massanari, 2001 WL 1563712, at *3 (N.D. Cal. Dec. 3, 2001) (ALJ did not err by neglecting to discuss daily activities in the decision because "although the ALJ was required to consider [plaintiff's] daily activities as part of the credibility analysis, there is no specific requirement that he set forth in the decision his analysis as to each factor identified in SSR 96-7p");[7] see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.") (internal quotation and citations omitted). Rather, the only mention of daily activities in the ALJ's decision is a remark noting plaintiff's allegation that her symptoms limited her ability to perform daily activities. (AR 26). Because the ALJ did not rely on daily activities as a basis to discount plaintiff's statements, plaintiff fails to identify any error.

Accordingly, plaintiff has failed to persuasively dispute the ALJ's assessment of her statements regarding the limiting effects of her symptoms. The ALJ provided legally sufficient reasons to discount these statements, and those reasons are supported by substantial evidence in the record.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 8, 2022

                                          /s/
                                     Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE

---

[7] Although SSR 96-7p was superseded by SSR 16-3p, the latter similarly provides that a claimant's daily activities will be considered but does not require that they be discussed in the decision.